UNITED STATES BANKRUPTCY COURT
DISTRICT OF NEW JERSEY

Order Filed on 5/20/2011 by Clerk U.S. Bankruptcy Court District of New Jersey

In re:

NEW JERSEY MOTORSPORTS PARK, LLC, *et al.*,

Debtors

Case No. 11-16752 JHW

Jointly Administered

## ORDER APPROVING SALE AND AUCTION PROCEDURES AND NOTICE PROCEDURES IN CONNECTION WITH PROPOSED DISPOSITION OF REORGANIZED INTERESTS

The relief set forth on the following pages is hereby ORDERED.

DATED:

_____
Judith H. Wizmur
Chief United States Bankruptcy Court Judge

**DATED: 5/20/2011**

_____
Judith H. Wizmur, Chief Judge
United States Bankruptcy Court

Page 2
New Jersey Motorsports Park, LLC; *et al.*
Case No. 11-16752 JHW Jointly Administered
Order Approving Sale and Auction Procedures and Notice Procedures in Connection With Proposed Disposition of Reorganized Interests

---

This matter having come before the Court upon the Motion of New Jersey Motorsports Park, LLC ("NJMP"), New Jersey Motorsports Park Operating Company, LLC ("Operating"), New Jersey Motorsports Park Urban Renewal, LLC ("Urban Renewal"), and New Jersey Motorsports Park Development Associates, LLC ("Development" and, collectively, the "Debtors") in the above-captioned matters for the entry of an Order Approving Sale and Auction Procedures and Notice Procedures in Connection With Proposed Disposition of Reorganized Interests (the "Motion"); and it appearing that the Court has jurisdiction over the Motion pursuant to 28 U.S.C. § 157(b)(2); and the Court having determined that granting the relief requested in the Motion is in the best interests of the Debtors, their estates, and their creditors; and upon the United States Trustee's objection to the Motion; and it appearing that adequate notice has been given and that no other or further notice is required; and upon the record herein following a hearing on the Motion; and after due deliberation thereon; and sufficient cause appearing therefor; it is hereby

ORDERED that the Motion is Granted to the extent set forth in "Exhibit 1" attached hereto; and it is further

ORDERED that the Break-Up Fee requested in the Motion be and hereby is withdrawn without prejudice; and it is further

ORDERED that the Bidding Procedures as revised, attached hereto as "Exhibit 1," are Approved; and it is further

*Approved by Judge Judith H. Wizmur May 20, 2011*

Page 3
New Jersey Motorsports Park, LLC; *et al.*
Case No. 11-16752 JHW Jointly Administered
Order Approving Sale and Auction Procedures and Notice Procedures in Connection With
Proposed Disposition of Reorganized Interests

---

ORDERED, that any party not on the Service List that wishes to obtain a copy of the Plan Documents, including all exhibits, may make such a request in writing to Cohen, Seglias, Pallas, Greenhall & Furman, P.C., Attn: Steven D. Usdin, Esquire, 30 South 17th Street, 19th Floor, Philadelphia, PA 19103.

# Exhibit 1

*Approved by Judge Judith H. Wizmur May 20, 2011*

UNITED STATES BANKRUPTCY COURT
DISTRICT OF NEW JERSEY

| | |
|---|---|
| In re:<br><br>NEW JERSEY MOTORSPORTS PARK, LLC, *et al.*,<br><br>Debtors | Chapter 11<br><br>Case No. 11-16752 JHW<br><br>Jointly Administered |

### SALE AND AUCTION PROCEDURES AND NOTICE PROCEDURES IN CONNECTION WITH PROPOSED DISPOSITION OF REORGANIZED INTERESTS

On March 7, 2011, New Jersey Motorsports Park, LLC ("NJMP"), New Jersey Motorsports Park Operating Company, LLC ("Operating"), New Jersey Motorsports Park Urban Renewal, LLC ("Urban Renewal"), and New Jersey Motorsports Park Development Associates, LLC ("Development" and, collectively, the "Debtors") each filed voluntary petitions for relief pursuant to Title 11, Chapter 11 of the United States Code (the "Bankruptcy Code") in the United States Bankruptcy Court for the District of New Jersey, Camden Vicinage (the "Bankruptcy Court").

On April 25, 2011, the Debtors filed that certain Debtors' Motion for Approval of Sale and Auction Procedures, Notice Procedures and Break-up Fee Provisions (the "Bidding Procedures") in Connection with Proposed Disposition of Reorganized Interests (docket no. 117) (the "Motion").[1]

The Bidding Procedures set forth herein define the process by which the Debtors are permitted to conduct an auction for the right to become a sponsor of the Plan (a "Plan Sponsor") and, in turn, the owner of 100% of the non-diluted Class A membership interests (the "Reorganized Interests") in Reorganized NJMP.

1. <u>Stalking Horse Proposed Transaction</u>.

Pursuant to the Term Sheets, and as set forth in the Debtors' Plan, NEI Motorsports LLC ("NEI") and Merrill Lynch Mortgage Capital, Inc. (the "Lender") have agreed to become the stalking horse Plan Sponsors and to enter into the Proposed Transaction.

The terms of the Proposed Transaction are summarized below; however Interested parties should review the Plan and the Term Sheets for the specific terms and conditions thereof. A review of these documents is essential to an understanding of the transactions contemplated in connection with these Bidding Procedures (including the Proposed Transaction), which will be effectuated pursuant to the Plan.

---

[1] Capitalized terms used but not defined herein shall have the meanings ascribed to such terms in the Motion.

Page 1 of 7

*Summary of Proposed Transaction Terms.*

- NEI will make a payment of not less than $2,000,000 (the "Funding") upon the occurrence of the effective date under the Plan (the "Plan Effective Date"), which will be used to fund certain obligations, including $500,000 that shall be used to fund distributions to the Debtors' general unsecured creditors (the "Unsecured Minimum Distribution").

- In consideration for the Funding, NEI shall receive 80.1% of the Reorganized Interests, 3.69236% of which NEI shall transfer to ML Green and 2.30764% of which NEI shall transfer to Holdings, all as more fully set forth in the Funding Term Sheet. As set forth in the Plan Term Sheet and the Plan, in the event the Proposed Transaction is ultimately determined to be the highest and best offer, the Lender will agree to exchange $20,500,000 of the Prepetition Obligations (the "Restructured Secured Debt Amount") for (a) secured loans in the total principal amount of $20,000,000 evidenced by a senior loan in the principal amount of $10,000,000 (Note A) and a subordinated loan in the principal amount of $10,000,000 evidenced by promissory note (Note B), having the other terms and subject to the conditions specified in the Facilities Term Sheet; and (b) 19.9% of the Reorganized Interests.

- If the Proposed Transaction is consummated, the Lender's deficiency claim (i.e., the Prepetition Obligations of $30,354,205.14 less the $20,500,000 Restructured Secured Debt Amount) (the "Deficiency Claim") will be treated as a general unsecured claim, but will not share in the Unsecured Minimum Distribution. However, the Deficiency Claim will share with general unsecured creditors in any distributions other than the Unsecured Minimum Distribution.

- The Proposed Transaction is subject to higher and better offers, which these Bidding Procedures are designed to encourage.

2.  Bidding Procedures

    A.  *Due Diligence.*

    i.  Upon execution of a confidentiality agreement supplied by the Debtors, in the form annexed hereto as Exhibit A (the "Confidentiality Agreement"), any party desiring to submit a bid (a "Potential Bidder") to become the Plan Sponsor and owner of the Reorganized Interests (such Potential Bidder's proposal, an "Alternative Transaction") upon the Plan Effective Date shall be granted access to relevant business and financial information of the Debtors to allow the Potential Bidder to evaluate the Debtors' business and assets for the sole purpose of submitting a bid; provided that the Debtors shall have no obligation to provide information to any party that, in the Debtors' business judgment, after consultation with the General Unsecured Creditors Committee appointed in the Debtors' bankruptcy cases (the "Committee") and the Lender, lacks the ability to consummate the Plan and provide necessary funding for the Alternative Transaction on the Plan Effective Date.

    ii.  Subject to the immediately preceding paragraph, any Potential Bidder that has signed a Confidentiality Agreement shall be permitted to examine the Debtors' assets, including any financial information relevant to its proposed transaction. Such examination shall be

conducted and completed at least three business days prior to the Auction. Such examination may include an on-site physical inspection of the Debtors' facilities during normal business hours with 24 hours' advance written notice to counsel for the Debtors, which notice shall be via electronic mail, facsimile, overnight mail and/or hand delivery. Such due diligence shall be conducted at mutually convenient dates and times and shall be conducted in a manner that is not disruptive to the Debtors' business operations.

  B.  *Qualifying Bids.*

  i. All Potential Bidders shall submit to the Debtors bids in the form of written agreements containing, at minimum, the terms below, accompanied by a signed Confidentiality Agreement (to the extent not previously provided). All bids shall be served on the Debtors at New Jersey Motorsports Park, LLC, Attn: Lee F. Brahin, 47 Warbird Drive, Millville, NJ 08332, with a copy to the undersigned counsel, Cohen Seglias Pallas Greenhall & Furman, P.C., Attn: Steven D. Usdin, Esquire, 30 South 17th Street, 19th Floor, Philadelphia, Pennsylvania 19103, so as to be received by the Debtors no later than 4:00 p.m. Eastern Prevailing Time on June 29, 2011 (the "Bid Deadline").

  ii. In order to constitute a "Qualifying Bid," such bid must conform to the following requirements:

  (a) provide for a cash payment on the Plan Effective Date of not less than $23,000,000, which shall include an overbid of $500,000.00 less any amounts that otherwise would have been used from the proposed Funding to fund reserves in accordance with the Funding Term Sheet (the "Minimum Overbid");[2]

  (b) set forth a list of executory contracts and unexpired leases that the Potential Bidder proposes the Debtors to assume, along with an undertaking by the Potential Bidder to pay any costs of cure in accordance with Section 365 of the Bankruptcy Code;[3]

  (c) not provide for any payment to the Potential Bidder of a break-up fee, expense reimbursement or similar type of fee or payment;

  (d) be accompanied by a deposit in the amount of $227,500, payable in immediately available funds (the "Deposit"), to be held by the Debtors' counsel to secure the Qualifying Bid, which Deposit, subject to the provisions of these Bidding Procedures, shall be refunded to the Potential Bidder without interest if the Potential Bidder's Qualifying Bid is not accepted by the Debtors as the highest and best offer;

---

[2] In accordance with the Plan, not less than $20,500,000 of the Minimum Overbid shall be used to satisfy the Restructured Secured Debt Amount on the Plan Effective Date and not less than $2,000,000 of the Minimum Overbid shall be used to fund at least those costs and other obligations contemplated to be satisfied by the Funding in the Funding Term Sheet, subject to the immediately preceding sentence.

[3] The assumption or rejection of any such executory contracts or unexpired leases will be effectuated pursuant to the procedures for assumption and rejection of executory contracts and unexpired leases set forth in the Plan.

*Approved by Judge Judith H. Wizmur May 20, 2011*

       (e)    contain financial and other information sufficient (i) to enable the Debtors, in their business judgment, after consultation with the Committee and the Lender, to evaluate and confirm the Potential Bidder's financial ability to consummate the transaction, including evidence reasonably satisfactory to the Debtors that the Potential Bidder has financial resources available and sufficient to become the Plan Sponsor and pay the Minimum Overbid,[4] (ii) to provide adequate assurance of future performance under Section 365 of the Bankruptcy Code, and (iii) to demonstrate that the Plan will be feasible if the Potential Bidder's bid is determined to be the highest and best bid;

       (f)    not contain any additional due diligence, financing or other contingencies of any kind;

       (g)    provide that the Qualifying Bid is irrevocable;

       (h)    fully disclose the identity of each entity that will be acquiring a portion of the Reorganized Interests under, or otherwise participating in connection with, such bid;

       (i)    provide that the Potential Bidder consents to the jurisdiction of the Bankruptcy Court;

       (j)    provide for a closing of the Alternative Transaction no later than the Plan Effective Date; and

       (k)    provide that the Potential Bidder shall undertake the obligations of Lender and Lee F. Brahin, under the Financial Security Agreement dated June 20, 2007 by and among the City, NJMP, and Merrill Lynch, and all amendments thereto. The Debtors reserve the right to identify any such other agreements that may survive the Plan Effective Date.

       iii.    The Debtors shall review each bid and determine, after consultation with the Lender and the Committee, whether such bid constitutes a Qualifying Bid. The Debtors shall promptly notify each party submitting a bid whether such bid constitutes a Qualifying Bid.

       iv.    In determining whether any bid constitutes a Qualifying Bid, any Potential Bidder shall be required, within twenty-four hours after the Debtors' request, to submit such additional financial statements and other documents relating to its business activities and its ability to consummate the transactions contemplated under its bid, as the Debtors, after consultation with the Committee and the Lender, deem necessary to analyze the bid.

       v.    Copies of each Qualifying Bid shall be made available to all Potential Bidders who submit a Qualifying Bid (each such bidder, a "Qualifying Bidder") within two business days from the Bid Deadline.

---

[4] If a Potential Bidder is an entity formed for the purpose of this transaction, such Potential Bidder must also provide similar financial information of the equity holder(s) of the Potential Bidder who will guarantee or fund the Potential Bidder's obligations.

Page 4 of 7

*Approved by Judge Judith H. Wizmur May  20, 2011*

vi.    NEI and the Lender shall be deemed Qualifying Bidders, and the joint bid submitted by them pursuant to the Proposed Transaction shall constitute a Qualifying Bid and the baseline bid for purposes of the Auction, which will have to be topped by Qualifying Bidders.

C.    *Auction.*

i.    The Auction shall commence at 10:00 a.m. Eastern Prevailing Time on July 6, 2011, at Cohen, Seglias, Pallas, Greenhall & Furman, P.C., 30 South 17th Street, 19th Floor, Philadelphia, PA 19103.

ii.    Only NEI, the Lender and any other Qualifying Bidders shall be permitted to participate in the Auction. NEI and the Lender shall be permitted to counter-bid against any other Qualifying Bidder on terms and conditions which are different from those set forth in the Term Sheets or the Plan. For the avoidance of doubt, the Lender shall be permitted to credit bid up to the full amount of the Prepetition Obligations in connection with any bid by it under Section 363(k) of the Bankruptcy Code.

iii.    Qualifying Bids made prior to or at the Auction may not be withdrawn after they are made, and all Qualifying Bids will remain open as irrevocable backup bids until the Proposed Transaction or an Alternative Transaction has been consummated with the successful bidder.

iv.    The following procedures shall govern the Auction:

(a)    each Qualifying Bidder (including NEI and the Lender) shall appear in person or through an authorized representative (which representative shall appear in person);

(b)    only Qualifying Bidders (including NEI and the Lender) shall be entitled to submit bids;

(c)    bidding at the Auction shall commence at the amount of the highest Qualifying Bid received by the Debtors;

(d)    each successive bid after the commencement of bidding at the Auction shall be at least $250,000 higher than the last outstanding highest bid;

(e)    the Debtors reserve their rights, in their business judgment, after consultation with the Committee and the Lender, to determine at any time whether a bid constitutes a higher and better offer than other bids received, and the Debtors shall be entitled to consider any factors, including but not limited to the consideration proposed under such bid, the financial or other wherewithal of the Qualifying Bidder to consummate the transactions contemplated under such bid and the overall benefit to the Debtors' estates;

(f)    the Debtors reserve their right to reject any proposed higher or better bid which, in their business judgment, after consultation with the Committee and the Lender, is deemed inadequate or insufficient, or which bid is contrary to the best interests of the

estates;

(g) any Qualifying Bidder (including NEI and Lender) may make any modifications to its Qualifying Bids at the Auction; provided that the Debtors reserve their right, in their business judgment, after consultation with the Committee and the Lender, to determine whether such modifications impact whether such bid represents the highest and best offer;

(h) the Debtors shall conduct the Auction until the Debtors determine, in their business judgment, after consultation with the Committee and the Lender, that they have received the highest and best offer available;

(i) each Qualifying Bidder shall comply with such other terms and procedures as may be imposed by the Bankruptcy Court at or prior to the Auction;

(j) the Debtors may, in their business judgment, after consultation with the Committee and the Lender, at any time prior to the Sale Hearing (as defined below), continue the Auction from time to time, adjourn the Auction and reopen the Auction, upon notice to NEI, the Lender, the Committee and any Qualifying Bidders, without notice to the Bankruptcy Court or any other persons or parties, and the Debtors may establish, by announcement at the Auction, any such modified or additional bidding procedures as the Debtors may deem appropriate based on the circumstances; provided, however, that such modifications and changes shall not materially alter the Bidding Procedures set forth herein; and

(k) the Debtors shall submit any disputes that may arise in connection with the Auction to, and for resolution by, the Bankruptcy Court.

D. *Identification of Prevailing Bidder; Court Approval at Sale Hearing.*

i. At the conclusion of the Auction, the Debtors shall announce the identity of the party submitting the highest and best offer (the "Prevailing Bid"). Such Prevailing Bid shall be subject to approval by the Bankruptcy Court at the Sale Hearing to approve the winning transaction (the "Sale Hearing").

ii. The Sale Hearing shall be held before the Honorable Judith H. Wizmur, Chief Bankruptcy Judge, at the United States Bankruptcy Court for the District of New Jersey, Camden Vicinage, Mitchell H. Cohen U.S. Courthouse, Courtroom 4B, 400 Cooper Street, Camden, New Jersey 08101 on July 14, 2011 at 10:00 a.m. prevailing Eastern time, or at such time thereafter as counsel may be heard, or at such other time as the Bankruptcy Court may establish.

iii. The Debtors' presentation to the Bankruptcy Court of any Qualified Bid and/or Prevailing Bid will not constitute the acceptance of any bid. The Debtors will be deemed to have accepted a successful bid only when such bid has been approved by the Bankruptcy Court by final order.

*Approved by Judge Judith H. Wizmur May 20, 2011*

    E.    *Failure to Consummate Transaction.*

    i.    If, for any reason, the party submitting the Prevailing Bid fails to consummate its transaction, the Debtors shall designate the next highest and best offer as the Prevailing Bid (the "Secondary Prevailing Bid"), and the Debtors shall be authorized to consummate the closing of the transaction with the party submitting the Secondary Prevailing Bid without further order of the Court.

    ii.    If, for any reason, the party submitting the Secondary Prevailing Bid fails to consummate the transaction, the Debtors shall designate the next highest and best offer as the Prevailing Bid (the "Tertiary Prevailing Bid"), and the Debtors shall be authorized to consummate the transaction with the party submitting the Tertiary Prevailing Bid without further order of the Court.

    iii.    If, for any reason, the party submitting the Prevailing Bid that is approved by the Bankruptcy Court, or any Secondary Prevailing Bid or Tertiary Prevailing Bid, fails or refuses to consummate a transaction on the terms set forth in its bid, or otherwise breaches the terms of any such bid, the Debtors shall be entitled to retain the Deposit provided by each such Qualifying Bidder, without limiting any other rights that the Debtors may have against such Qualifying Bidder.

    F.    *Return of Deposit.*

Except as provided above in connection with the failure of a party submitting the Prevailing Bid, the Secondary Prevailing Bid or the Tertiary Prevailing Bid to consummate the transactions contemplated under such bids, each Deposit shall be returned to the Qualifying Bidder who supplied the Deposit, without interest, within thirty (30) days after the completion of the Sale Hearing.

    G.    *Jurisdiction of the Bankruptcy Court.*

The Bankruptcy Court shall have jurisdiction to hear any matters that may arise from or relate to these Bidding Procedures, the Auction and/or the transactions in connection therewith. If a party other than NEI and the Lender submits the Prevailing Bid, NEI and the Lender shall have standing to object thereto.

#1272046-v1 50919-0001

*Approved by Judge Judith H. Wizmur May 20, 2011*