COHEN, SEGLIAS, PALLAS,
GREENHALL & FURMAN, PC
Steven D. Usdin, Esquire
Nella M. Bloom, Esquire (NB3891)
30 South 17th Street, 19th Floor
Philadelphia, PA 19103
Tel: (215) 564-1700
Fax: (215) 564-3066
Email:  susdin@cohenseglias.com
        nbloom@cohenseglias.com

UNITED STATES BANKRUPTCY COURT
DISTRICT OF NEW JERSEY

| | |
|---|---|
| In re:<br><br>NEW JERSEY MOTORSPORTS PARK, LLC, *et al.*,<br><br>Debtors | Chapter 11<br><br>Case No. 11-16752 JHW<br><br>Jointly Administered |

## SECOND AMENDED JOINT PLAN OF REORGANIZATION UNDER CHAPTER 11 OF THE BANKRUPTCY CODE

The Debtors and Plan Proponents, New Jersey Motorsports Park, LLC; New Jersey Motorsports Park Operating Company, LLC; New Jersey Motorsports Park Urban Renewal, LLC; and New Jersey Motorsports Park Development Associates, LLC respectfully submit this Second Amended Plan of Reorganization pursuant to Chapter 11, Title 11 of the United States Code, in the form annexed hereto and made a part hereof.

Plan Proponent


/s/ Lee F. Brahin
Lee F. Brahin
Co-Managing Member


DATED:    May 26, 2011

## TABLE OF CONTENTS

|  |  | Page |
|---|---|---|
| Article I | Definitions and Construction of Terms ………………………………….. | 3 |
| Article II | Classification and Treatment of Claims ………………………………… | 12 |
| Article III | Classification of Claims …………………………………………………… | 13 |
| Article IV | Treatment of Claims ……………………………………………………….. | 14 |
| Article V | Acceptance or Rejection of the Plan …………………………………… | 16 |
| Article VI | Provisions Governing Distributions ……………………………………... | 17 |
| Article VII | Procedures for Resolving and Treating Disputed Administrative Expense Claims and Claims ……………………………………………… | 18 |
| Article VIII | Executory Contracts and Unexpired Leases …………………………... | 19 |
| Article IX | Means for Implementation of the Plan ………………………………… | 21 |
| Article X | Settlement, Release, Injunction and Related Provisions ……………… | 25 |
| Article XI | Effectiveness of the Plan …………………………………………………... | 27 |
| Article XII | Retention of Jurisdiction …………………………………………………... | 28 |
| Article XIII | Miscellaneous Provisions ………………………………………………….. | 29 |

# AMENDED JOINT PLAN OF LIQUIDATION UNDER
# CHAPTER 11 OF THE BANKRUPTCY CODE

New Jersey Motorsports Park, LLC ("NJMP"), New Jersey Motorsports Park Operating Company, LLC ("Operating"), New Jersey Motorsports Park Urban Renewal, LLC ("Urban"), and New Jersey Motorsports Park Development Associates, LLC ("Development" and, collectively, the "Debtors"), are the Debtors in four (4) Chapter 11 bankruptcy cases. On March 7, 2011, the Debtors commenced the bankruptcy cases by filing Chapter 11 petitions under the Bankruptcy Code. This document is the joint chapter 11 plan proposed under sections 1121(a) and 1123 of the Bankruptcy Code by the Debtors. Sent to you in the same envelope as this Amended Plan is the Debtors' joint Amended Disclosure Statement (as defined below), which has been approved by the United States Bankruptcy Court for the District of New Jersey, Vicinage of Camden (the "Bankruptcy Court"), and which is provided to help you understand the Plan.

The Plan provides for the reorganization of the Debtors' assets and the satisfaction by the Debtors of their obligations to creditors in accordance with the relative priorities set forth in the Bankruptcy Code.

# ARTICLE I

# DEFINITIONS AND CONSTRUCTION OF TERMS

Definitions. As used herein, the following terms have the respective meanings specified below:

1.1    Administrative Expense Claim means any right to payment constituting a cost or expense of administration of the Chapter 11 Cases under sections 503(b) and 507(a)(2) of the Bankruptcy Code, including, without limitation, any actual and necessary costs and expenses of preserving the estates of the Debtors, any costs and expenses of the Debtors in connection with the administration and implementation of the Plan, any indebtedness or obligations incurred or assumed by the Debtors in connection with the conduct of their businesses after the Commencement Date, including, without limitation, for the acquisition or lease of property or an interest in property or the rendition of services, all compensation and reimbursement of expenses to the extent allowed by the Bankruptcy Court under sections 330 or 503 of the Bankruptcy Code and any fees or charges assessed against the estates of the Debtors under section 1930 of chapter 123 of Title 28 of the United States Code.

1.2    Affiliate has the meaning ascribed to such term in section 101(2) of the Bankruptcy Code.

1.3    Allowed Claim means, with reference to any Claim, or Administrative Expense Claim (a) any Claim or Administrative Expense Claim against the Debtors which has been listed by the Debtors in their Schedules, as such Schedules may be amended by the Debtors from time to time in accordance with Bankruptcy Rule 1009, as liquidated in amount and not disputed,

unliquidated or contingent and for which no contrary proof of claim has been filed, (b) any Claim or Administrative Expense Claim which is not Disputed, (c) any Claim or Administrative Expense Claim that is compromised, settled or otherwise resolved pursuant to a non-appealable Final Order of the Bankruptcy Court or under the Plan, or (d) any Claim or Administrative Expense Claim which, if Disputed, has been Allowed by Final Order; provided, however, that Claims allowed solely for the purpose of voting to accept or reject the Plan pursuant to an order of the Bankruptcy Court shall not be considered "Allowed Claims" hereunder.  Unless otherwise specified herein or by order of the Bankruptcy Court, "Allowed Administrative Expense Claim" or "Allowed Claim" shall not, for any purpose under the Plan, include interest, punitive damages or any fine or penalty on such Administrative Expense Claim or Allowed Claim from and after the Commencement Date.  For purposes of determining the amount of an Allowed Claim, there shall be deducted therefrom an amount equal to the amount of any claim which the Debtors may hold or assert against the holder thereof, to the extent such claim may be set off pursuant to sections 502(d) or 553 of the Bankruptcy Code.

1.4     <u>Ballot</u> means the form distributed to each holder of an Allowed Claim in an Impaired Class on which is to be indicated acceptance or rejection of the Plan.

1.5     <u>Bankruptcy Code</u> means the Bankruptcy Reform Act of 1978, as codified in Title 11 of the United States Code, as amended from time to time, as applicable to the Chapter 11 Case.

1.6     <u>Bankruptcy Court</u> has the meaning ascribed to such term in the preamble to this Plan.

1.7     <u>Bankruptcy Rules</u> means the Federal Rules of Bankruptcy Procedure as promulgated by the United States Supreme Court under section 2075 of Title 28 of the United States Code, and any Local Rules of the Bankruptcy Court, as amended.

1.8     <u>Bidding Procedures Order</u> means the Order Approving Sale and Auction Procedures and Notice Procedures In Connection With Proposed Auction, approved and entered by the Bankruptcy Court on May 20, 2011 (docket no. 148).

1.9     <u>Budget</u> means the budget appended to the Cash Collateral Order, as such Budget may be updated, amended or modified in accordance with the terms of the Cash Collateral Order.

1.10    <u>Business Day</u> means any day other than a Saturday, Sunday or any other day on which commercial banks in Camden, New Jersey, are required or authorized to close by law or executive order.

1.11    <u>Cash</u> means legal tender of the United States of America or wire transfer denominated in U.S. Dollars from a domestic bank.

1.12    <u>Cash Collateral Order</u> means that certain Final Order (I) Authorizing Use of Cash Collateral and (II) Granting Adequate Protection entered on April 12, 2011 (docket no. 98).

1.13    Causes of Action means, without limitation, any and all actions, causes of action, liabilities, obligations, rights, suits, damages, judgments, claims and demands whatsoever, whether known or unknown, existing or hereafter arising, in law, equity or otherwise, based in whole or in part upon any act or omission or other event occurring prior to the Commencement Date or during the course of the Chapter 11 Cases, including through the Effective Date, including, without limitation, avoidance actions arising under Chapter 5 of the Bankruptcy Code.

1.14    CEZ Claim means the subordinated General Unsecured Claim of the Cumberland Empowerment Zone Corp. as lender under that certain Promissory Note dated as of December 1, 2009 (as amended), in the principal amount of $425,000.00.

1.15    Chapter 11 Cases means, collectively, the cases under chapter 11 of the Bankruptcy Code commenced by the Debtors, styled *In re New Jersey Motorsports Park, LLC* (Case No. 11-16752 JHW), *In re New Jersey Motorsports Park Operating Company, LLC* (Case No. 11-16772 JHW), *In re New Jersey Motorsports Park Urban Renewal, LLC* (Case No. 11-16778 JHW), and *In re New Jersey Motorsports Park Development Associates, LLC* (Case No. 11-16776 JHW), currently pending before the Bankruptcy Court.

1.16    City means the City of Millville, New Jersey, as well as its administrative subdivisions, political representatives, officers, agents, and/or representatives.

1.17    Claim has the meaning set forth in section 101(5) of the Bankruptcy Code.

1.18    Class means a category of holders of Claims as set forth in Article III of the Plan.

1.19    Collateral means any property or interest in property of the estate of the Debtors subject to a Lien to secure the payment or performance of a Claim, which Lien is not subject to avoidance or otherwise invalid under the Bankruptcy Code or applicable state law.

1.20    Commencement Date means March 7, 2011, the date on which the Debtors commenced the Chapter 11 Cases.

1.22    Committee means the Official Committee of Unsecured Creditors appointed on or about March 28, 2011, consisting of HPT Systems, Inc.; Barlen Group, Inc.; and Sysco Philadelphia.

1.23    Committee Released Parties means the Committee, the members of the Committee, and any attorney or other professional retained by the Committee appointed in these Chapter 11 Cases.

1.24    Confirmation Date means the date on which the Clerk of the Bankruptcy Court enters the Confirmation Order on the docket.

1.25    Confirmation Hearing means the hearing held by the Bankruptcy Court to consider confirmation of the Plan pursuant to section 1129 of the Bankruptcy Code, as such hearing may be adjourned or continued from time to time.

1.26    Confirmation Order means the order of the Bankruptcy Court confirming this Plan pursuant to section 1129 of the Bankruptcy Code, which order is in form and substance reasonably acceptable to the Debtors and Merrill Lynch.

1.27    Creditor shall mean any person that has an Allowed Claim against the Debtors that arose on or before the Commencement Date or an Allowed Claim against the Debtors' Estates of any kind specified in sections 502(g), 502(h), or 502(i) of the Bankruptcy Code.  This includes all persons, corporations, partnerships, or business entities holding Allowed Claims against the Debtors.

1.28    Debtors has the meaning ascribed to such term in the preamble of this Plan.

1.29    Development has the meaning ascribed to such term in the preamble of this Plan.

1.30    Disclosure Statement means the joint disclosure statement relating to the Plan as amended on or about May 24, 2011, including, without limitation, all exhibits and schedules thereto, as approved by the Bankruptcy Court pursuant to section 1125 of the Bankruptcy Code.

1.31    Disputed means (a) every Claim which has been or hereafter is listed in the Debtors' Schedules as unliquidated, disputed or contingent, (b) which is disputed under the Plan, (c) as to which the Debtors or any other party in interest have interposed a timely objection and/or request for estimation in accordance with section 502(c) of the Bankruptcy Code and Bankruptcy Rule 3018, which objection and/or request for estimation has not been withdrawn or overruled by a Final Order, or (d) any Claim, proof of which was required to be filed by order of the Bankruptcy Court but as to which a proof of claim was not timely or properly filed.

1.32    Disputed Claim Amount means the amount set forth in the proof of claim relating to a Disputed Claim or, if an amount is estimated in respect of a Disputed Claim in accordance with section 502(c) of the Bankruptcy Code and Bankruptcy Rule 3007, the amount so estimated pursuant to an order of the Bankruptcy Court.

1.33    Disputed General Unsecured Claims Reserve means, in the event there exists any Disputed General Unsecured Claim on or after the Effective Date, Cash to be set aside by the Plan Administrator pursuant to section 7.4 of the Plan, in one or more separate bank accounts, in an amount sufficient to pay the distributions to all Disputed General Unsecured Claims at the time such distributions are made in accordance with the provisions of the Plan, if such Disputed General Unsecured Claims become Allowed Claims.

1.34    Distribution Date means the date that is thirty (30) days after the Effective Date (or the first Business Day thereafter).

1.35    Effective Date means the first Business Day thirty (30) days after the Order approving the Plan becomes a Final Order.

1.36    Entity shall have the meaning set forth in section 101(15) of the Bankruptcy Code.

1.37    Estates means, collectively, the Debtors' estates created under section 541 of the Bankruptcy Code in these Chapter 11 Cases.

1.38    Estimated Reorganization Expenses means the amount of Cash estimated by the Debtors, from time to time, as necessary to fund adequately the administration of the Plan and the Chapter 11 Cases on and after the Effective Date.

1.39    Facilities Term Sheet means that certain Term Sheet for Loan Facilities Pursuant to Reorganization Under Title 11 of the United States Code for Thunderbolt Raceway New Jersey Motorsports Park, Millville, NJ dated as of March 7, 2011.

1.40    Final Distribution Date means the date on which a final distribution is made pursuant to Article VI of the Plan.  The Final Distribution Date shall be a date, as determined by the Plan Administrator, (i) which is after the reorganization of all assets of the Debtors (other than those assets abandoned by the Debtors) and the collection of other sums due or otherwise remitted or returned to the Debtors' Estates, and (ii) on or after which a final distribution is made from the Disputed General Unsecured Claims Reserve pursuant to sections 7.4 and 7.5 of the Plan after final resolution of all Disputed Claims.

1.41    Final Order means an order of the Bankruptcy Court or any other court of competent jurisdiction as to which the time to appeal, petition for certiorari, or move for reargument or rehearing has expired and as to which no appeal, petition for certiorari, or other proceedings for reargument or rehearing shall then be pending or as to which any right to appeal, petition for certiorari, reargue, or rehearing shall have been waived in writing in form and substance satisfactory to the Debtors, or, in the event that an appeal, writ of certiorari, or reargument or rehearing thereof has been sought, such order of the Bankruptcy Court or other court of competent jurisdiction shall have been upheld by the highest court to which such order was appealed, or from which certiorari, reargument or rehearing was sought and the time to take any further appeal, petition for certiorari or move for reargument or rehearing shall have expired; provided, however, that the possibility that a motion under Rule 59 or Rule 60 of the Federal Rules of Civil Procedure, or any analogous rule under the Bankruptcy Rules or applicable state court rules of civil procedure, may be filed with respect to such order shall not cause such order not to be a Final Order.

1.42    Funding Term Sheet means that certain letter from NEI initially dated as of March 11, 2011, as amended on April 12, 2011, pursuant to which NEI agreed to provide the NEI Funding in the event it is the Successful Bidder.

1.43    General Unsecured Claim means any Claim other than a Secured Claim, Administrative Expense Claim, Priority Tax Claim or Other Priority Claim.

1.44    Holdings means non-debtor New Jersey Motorsports Park Holding Company, LLC, the Managing Member of Debtor NJMP.

1.45    Holdings Claim means the subordinated General Unsecured Claim of Holdings as lender under that certain Special Promissory Note dated as of March 11, 2009 in the principal amount of $500,000.

1.46    Interests means any common shares, membership interests or other common equity interests in NJMP, whether or not transferable, and any option, warrant, or right, contractual or otherwise, to acquire any such interest.

1.47    Impaired, when used as an adjective preceding the words "Class of Claims" or "Class," shall mean that the Plan alters the legal, equitable or contractual rights of the member of that Class.

1.48    Lender Debt Distribution means loans by Merrill Lynch to Reorganized Debtors (a) in the total principal amount of $20,000,000.00 evidenced by a senior loan in the principal amount of $10,000,000.00 (Note A) and a subordinate loan evidenced by promissory note (Note B), having the other terms and subject to the conditions specified in the Facilities Term Sheet.

1.49    Lender Equity Distribution means 19.9% of the Reorganized Equity Interests.

1.50    Lender Deficiency Claim shall have the meaning assigned to it in Section 4.1 of this Plan.

1.51    Lender Released Parties means Merrill Lynch and any subsidiaries, affiliates, managed accounts or funds, officers, directors, principals, shareholders employees, agents, financial advisors, attorneys, accountants, investment bankers, consultants, representatives, management companies, fund advisors and other professionals of Merrill Lynch.

1.52    Lien has the meaning set forth in section 101(37) of the Bankruptcy Code.

1.53    Litigation means, collectively, all litigation set forth in any of the Debtors' Statements of Financial Affairs, Section 4(a).

1.54    Merrill Lynch means Merrill Lynch Mortgage Capital Inc.

1.55    ML Green means ML Green, LLC.

1.56    MDA means that certain agreement between the City and NJMP relating to the development of the Real Property, dated June 15, 2004, and any addenda, exhibits, and/or amendments thereto.

1.57    NEI means NEI Motorsports, LLC.

1.58    NEI Funding has the meaning ascribed to such term in Section 9.1 hereof.

1.59    NJMP has the meaning ascribed to such term in the preamble of this Plan.

1.60    Operating has the meaning ascribed to such term in the preamble of this Plan.

1.61    Option means the agreement between the City and NJMP for an option to purchase certain real property located in the City of Millville, County of Cumberland, State of New Jersey, at Block 124, Lot 16.

1.62    Other Priority Claim means any Claim, other than an Administrative Expense Claim or a Priority Tax Claim, entitled to priority in right of payment under section 507(a) of the Bankruptcy Code, but only to the extent entitled to such priority.

1.63    Other Secured Claim means any Secured Claim other than the Secured Claim of Merrill Lynch.

1.64    Ovations means Ovations Food Services, LP.

1.65    Person shall have the meaning set forth in section 101(41) of the Bankruptcy Code.

1.66    PILOT means that certain agreement between the City and Urban allowing for a Payment In Lieu Of Taxes, dated March 9, 2007, and any addenda, exhibits, and/or amendments thereto.

1.67    Plan means this chapter 11 plan of reorganization, as amended on or about May 24, 2011, including, without limitation, any exhibits, supplements, appendices and schedules hereto, either in its present form or as the same may be altered, amended, or modified from time to time.

1.68    Plan Administrator means Lee F. Brahin, Co-Manager of Holdings, for purposes of administering and consummating the Plan, or any successor thereto.

1.69    Plan Supplement means the pleading to be filed with the Bankruptcy Court no later than ten (10) days prior to the deadline set by the Bankruptcy Court for filing objections to the Plan, which will contain forms of the Reorganized NJMP operating agreement and other organization documents, financing and other loan documents, a schedule of executory contracts and unexpired leases to be assumed, or assumed and assigned pursuant to Article VIII of the Plan, the identity of the Successful Bidder, information regarding the management of the Successful Bidder, and any other documents that may be deemed necessary by the Debtors, all of which are incorporated herein by reference and shall constitute part of the Plan.

1.70    Plan Pool means the pot of Cash available for distributions to holders of Class 3 and Class 4 Allowed General Unsecured Claims that is paid by the Successful Bidder in accordance with the Bidding Procedures Order and this Plan.

1.71    Plan Proponents means the Debtors.

1.72    <u>Postpetition Interest</u> means interest accruing or accrued after the Commencement Date on any Allowed Claim.

1.73    <u>Priority Tax Claim</u> means any Claim of a governmental unit of the kind specified in sections 502(i) and 507(a)(8) of the Bankruptcy Code.

1.74    <u>Pro Rata Share</u> means a proportionate share, so that the ratio of the consideration distributed on account of an Allowed Claim in a Class to the amount of such Allowed Claim is the same as the ratio of the amount of the consideration distributed on account of all Allowed Claims in such Class to the amount of all Allowed Claims in such Class; <u>provided</u> that Claims in Class 3 and Class 4 shall be aggregated for purposes of determining the Pro Rata Share of the Plan Pool to which each holder of Class 3 or Class 4 Allowed Claims is entitled.

1.75    <u>Professional Persons</u> means and refers to all attorneys, accountants, appraisers, real estate brokers, consultants, and other professionals retained or to be compensated pursuant to an Order of the Court entered under Sections 327, 328, 330, or 503(b) of the Bankruptcy Code.

1.76    <u>Real Property</u> means, collectively, the real property located in the City of Millville, County of Cumberland, State of New Jersey, owned by Debtors Development and Urban, as well as the improvements to that real property, owned by Debtor NJMP.

1.77    <u>Released Parties</u> means the Lender Released Parties, the Committee Released Parties, the Debtors, and any officer, director or employee of, or attorney or other professional for, the Debtors if such officer, director, employee or professional served in such capacity on or after the Petition Date and continued to be employed as of the Effective Date.

1.78    <u>Reorganized Debtors</u> means the Debtors, or each of them individually, on or after the Effective Date.

1.79    <u>Reorganized Equity Interests</u> means the Class A non diluted membership interests of Reorganized NJMP.

1.80    <u>Reorganized NJMP</u> means NJMP on or after the Effective Date.

1.81    <u>Retained Causes of Action</u> means those Causes of Action retained by the Debtors after the Effective Date that are not subject to the Liens of Merrill Lynch under the Cash Collateral Order or, in the event subject to those Liens, retained by the Debtors upon consent of Merrill Lynch.

1.82    <u>Schedules</u> means the schedules of assets and liabilities and the statements of financial affairs filed by the Debtors under section 521 of the Bankruptcy Code and Bankruptcy Rule 1007, and all amendments and modifications thereto through and including the date by which objections to Claims must be filed with the Bankruptcy Court pursuant to Section 7.1 of the Plan.

1.83    <u>Secured Claim</u> means any Claim, to the extent reflected in the Debtors' Schedules or a proof of claim as a Secured Claim, which is secured by a Lien on Collateral, to the extent of the value of such Collateral, as determined in accordance with section 506(a) of the Bankruptcy Code, or, in the event that such Claim is subject to a permissible setoff under section 553 of the Bankruptcy Code.

1.84    <u>Subsequent Distribution Date</u> means the six (6) month anniversary date of the Effective Date and each annual anniversary date thereafter, or such sooner dates as the Plan Administrator may determine in his sole discretion.

1.85    <u>Successful Bidder</u> means the Entity who is the prevailing party pursuant to the Bidding Procedures Order.

1.86    <u>Tax Authority</u> means a federal, state, local, or foreign government, or agency, instrumentality, or employee thereof, court, or other body (if any) charged with the administration of any law relating to Taxes.

1.87    <u>Taxes</u> means all (i) federal, state, local, or foreign taxes, including, without limitation, all mortgage, recording, net income, alternative minimum, net worth or gross receipts, capital, value added, franchise, profits, and estimated taxes, and (ii) interest, penalties, fines, additions to tax or additional amounts imposed by any Tax Authority or paid in connection with any item described in clause (i) hereof.

1.88    <u>Termination Date</u> means the date upon which the Debtors make their final payment to any Creditor.

1.89    <u>Urban</u> has the meaning ascribed to such term in the preamble of this Plan.

1.90    <u>Voting Record Date</u> means the date established by the Bankruptcy Court for the purpose of determining the holders of Allowed Claims entitled to vote on the Plan, which is _____, 2011 [the date the order approving the DS is entered].

<u>Interpretation; Application of Definitions and Rules of Construction</u>.  Wherever from the context it appears appropriate, each term stated in either the singular or the plural shall include both the singular and the plural and pronouns stated in the masculine, feminine or neuter gender shall include the masculine, feminine and neuter.  Unless otherwise specified, all section, article, schedule or exhibit references in the Plan are to the respective Section in, Article of, Schedule to, or Exhibit to, the Plan.  The words "herein," "hereof," "hereto," "hereunder" and other words of similar import refer to the Plan as a whole and not to any particular section, subsection or clause contained in the Plan.  The rules of construction contained in section 102 of the Bankruptcy Code shall apply to the construction of the Plan.  A capitalized term used herein that is not defined herein, but that is used in the Bankruptcy Code, shall have the meaning ascribed to that term in the Bankruptcy Code.  The headings in the Plan are for convenience of reference only and shall not limit or otherwise affect the provisions of the Plan.

# ARTICLE II

## CLASSIFICATION AND TREATMENT OF CLAIMS

2.1     <u>Non-Classification</u>.  As provided in section 1123(a) of the Bankruptcy Code, Administrative Expense Claims and Priority Tax Claims are not classified for the purposes of voting on or receiving distributions under the Plan.  All such Claims are instead treated separately pursuant to the terms set forth in this Article II.

2.2     <u>Administrative Expense and Fee Claims</u>.  Except to the extent that any Entity entitled to payment of an Allowed Administrative Expense Claim agrees to a less favorable treatment, each holder of an Allowed Administrative Expense Claim (save only Allowed Administrative Expense Claims for professional compensation and reimbursement of expenses that are specifically addressed in section 2.3 below) shall receive Cash in an amount equal to such Allowed Administrative Expense Claim on the later of the Effective Date and the date such Administrative Expense Claim becomes an Allowed Administrative Expense Claim, or as soon thereafter as is practicable; provided, however, that Allowed Administrative Expense Claims representing liabilities incurred in the ordinary course of business by the Debtors shall be paid in full and performed by the Debtors in accordance with the terms and subject to the conditions of any agreements governing, instruments evidencing, or other documents relating to such transactions.

2.3     <u>Professional Compensation and Reimbursement Claims</u>.  All Entities seeking an award by the Bankruptcy Court of compensation for services rendered and reimbursement of expenses incurred through and including the Effective Date under sections 330 or 331 of the Bankruptcy Code or entitled to the priorities established pursuant to sections 503(b)(2), 503(b)(3), 503(b)(4) or 503(b)(5) of the Bankruptcy Code shall (a) file their respective final applications for allowances of compensation for services rendered and reimbursement of expenses incurred through the Effective Date by no later than the date which is no later than thirty (30) days after the Effective Date, or such other date as may be fixed by the Bankruptcy Court, and (b) if granted such an award by the Bankruptcy Court, be paid in full in Cash in such amounts as are Allowed by the Bankruptcy Court, (i) on the date upon which such Administrative Expense Claim becomes an Allowed Administrative Expense Claim, or as soon thereafter as is practicable, (ii) upon such other terms more favorable to the Reorganized Debtors as may be mutually agreed upon between such holder of an Administrative Expense Claim and the Reorganized Debtors, or (iii) in accordance with the terms of any applicable administrative procedures order entered by the Bankruptcy Court.  Any requests for compensation for services rendered after the Effective Date shall not require Bankruptcy Court approval.

2.4     <u>Priority Tax Claims</u>.  Except to the extent that a holder of an Allowed Priority Tax Claim has been paid prior to the Effective Date or agrees to a different treatment, each holder of an Allowed Priority Tax Claim shall receive, in full and complete settlement, satisfaction and discharge of its Allowed Priority Tax Claim, at the option of the Debtors, (a) Cash in an amount equal to such Allowed Priority Tax Claim on the later of the Effective Date and the date such Priority Tax Claim becomes an Allowed Priority Tax Claim, or as soon thereafter as is practicable, (b) in accordance with section 1129(a)(9)(C) of the Bankruptcy Code, equal annual Cash payments commencing on the first anniversary of the Effective Date in an aggregate

amount equal to such Allowed Priority Tax Claim, together with simple interest on any outstanding balance from the Effective Date at the applicable statutory rate, over a period not exceeding five (5) years after the Commencement Date, or (c) upon such other terms determined by the Bankruptcy Court to provide the holder of such Allowed Priority Tax Claim with deferred Cash payments having a value, as of the Effective Date, equal to such Allowed Priority Tax Claim; provided, however, that the Debtors shall have the right to pay any Allowed Priority Tax Claim, or any remaining balance, in full, at any time on or after the Effective Date, without premium or penalty.

Under the Plan, no holder of an Allowed Priority Tax Claim shall be entitled to any payments on account of any Postpetition Interest or penalty with respect to or in connection with an Allowed Priority Tax Claim.  Any such Claim or demand for any Postpetition Interest or penalty will be discharged upon confirmation by section 1141(d)(1) of the Bankruptcy Code, and the Allowed Priority Tax Claim holder shall not assess or attempt to collect such accrued Postpetition Interest or penalty from the Debtor or its property.

## ARTICLE III

## CLASSIFICATION OF CLAIMS

Claims, other than Administrative Expense Claims and Priority Tax Claims, are classified for all purposes, including voting, confirmation and distribution pursuant to the Plan, as follows:

| Class | Type of Claim | Status |
|-------|---------------|--------|
| 1 | Secured Claim of Merrill Lynch | Impaired |
| 1(a) | Other Secured Claims | Unimpaired |
| 2 | Other Priority Claims | Unimpaired |
| 3 | General Unsecured Claims | Impaired |
| 4 | Equity Security Holders | Impaired |

## ARTICLE IV

## TREATMENT OF CLAIMS

4.1     Class 1 – Secured Claims of Merrill Lynch.

(a)     Impairment and Voting.  In relation to Class 1, Merrill Lynch is impaired by the Plan, and is entitled to vote to accept or reject the Plan.

(b)     Distribution/Treatment.  If NEI is the Successful Bidder, then this subsection (b) shall apply and, in full and complete settlement, satisfaction and discharge of its Allowed Secured Claims, (i) Merrill Lynch shall reduce the amount of its Allowed Secured Claims from a total of approximately $30,543,205.13.00 to a total of $20,500,000.00 (the "Reduced Secured Claim"); (ii) shall be granted an Allowed General Unsecured Claim equal to the difference between $30,543,205.13.00 and the Reduced Secured Claim (such Allowed Claim, the "Lender Deficiency Claim") and (iii) in exchange for its Reduced Secured Claim, Merrill

Lynch shall receive on the Effective Date the Lender Debt Distribution and the Lender Equity Distribution. The Lender Deficiency Claim shall be a Class 3 General Unsecured Claim.

(c) Distribution/Treatment. If NEI is not the Successful Bidder, then this subsection (c) shall apply and, in full and complete settlement, satisfaction and discharge of its Allowed Secured Claims, (i) Merrill Lynch shall receive cash on the Effective Date in the total amount of $20,500,000.00 and (ii) shall be granted the Lender Deficiency Claim, which shall be a Class 3 Claim.

| Class | Status |
|---|---|
| Class 1 – Secured Claim of Merrill Lynch | Impaired |

4.2     Class 1(a) - Other Secured Claims.

Class 1(a) consists of all Other Secured Claims.

(a) Impairment and Voting: Class 1(a) is unimpaired, and holders of Class 1(a) Claims are conclusively presumed to have accepted the Plan pursuant to section 1126(f) of the Bankruptcy Code. Therefore, holders of Class 1(a) Other Secured Claims are not entitled to vote to accept or reject the Plan.

(b) Treatment. On or as soon as practicable after the Effective Date, holders of Allowed Claims in Class 1(a), in full and final satisfaction of their Claims secured by valid Liens on the Debtors' property, shall receive one of the following treatments at the option of the applicable Debtor:

(i) payment of the Allowed Class 1(a) Claim in full in Cash on the later of the Distribution Date or as soon as practicable after a particular Secured Claim becomes Allowed;

(ii) such other treatment as may be agreed to by the applicable Debtor and the holder; or

(iii) the holder shall retain its Lien on such property, the Debtors shall cure defaults, if any, and the holder's lien shall be reinstated pursuant to section 1129 of the Bankruptcy Code.

| Class | Status |
|---|---|
| Class 1(a) – Other Secured Claims | Unimpaired |

4.3     Class 2 – Other Priority Claims.

(a) Impairment and Voting. Class 2 is unimpaired by the Plan. Each holder of an Allowed Other Priority Claim against any of the Debtors is conclusively presumed to have accepted the Plan and is not entitled to vote to accept or reject the Plan.

(b)    Distributions.  Except to the extent that a holder of an Allowed Other Priority Claim has been paid by any Debtor prior to the Effective Date or agrees to a different treatment, each holder of an Allowed Other Priority Claim shall receive, in full and complete settlement, satisfaction and discharge of its Allowed Other Priority Claim, Cash and/or services of equivalent Cash value, in an amount equal to such Allowed Other Priority Claim on the later of the Effective Date and the date such Other Priority Claim becomes an Allowed Other Priority Claim, or as soon thereafter as is practicable.

| Class | Status |
|---|---|
| Class 2 – Other Priority Claims | Unimpaired |

4.4    Class 3 – General Unsecured Claims.

(a)    Impairment and Voting.  Class 3 is impaired by the Plan.  Each holder of an Allowed Class 3 General Unsecured Claim is entitled to vote to accept or reject the Plan.

(b)    Distributions/Treatment.  Each holder of an Allowed Class 3 Claim shall receive, in full and complete settlement, satisfaction and discharge of its Allowed Class 3 Claim, its Pro Rata Share of the funds available from the Plan Pool on the earlier to occur of thirty (30) days after the Effective Date or the Subsequent Distribution Date after such Claim becomes an Allowed Claim.

(c)    Merrill Lynch.  By virtue of the Lender Deficiency Claim, Merrill Lynch is a holder of a Class 3 Claim.  As a holder of a Class 3 Claim, Merrill Lynch has agreed to waive its right to receive distributions from the first $500,000.00 of the Plan Pool proceeds, but shall share ratably with other holders of Class 3 Claims in Plan Pool proceeds that exceed $500,000.00.  In the event that other consideration is available besides funds in the Plan Pool to pay Class 3 Claims, the Lender Deficiency Claim shall be entitled receive a distribution in the amount of its Pro Rata Share of those assets as well.

| Class | Status |
|---|---|
| Class 3 – General Unsecured Claims | Impaired |

4.5    Class 4 – Interests

(a)    Impairment and Voting.  Class 4 is impaired by the Plan and conclusively deemed to have voted to reject the Plan pursuant to Section 1126(g) of the Bankruptcy Code.

(b)    Distributions/Treatment.  On the Effective Date, the Interests shall be cancelled and the holders of such Interests shall receive no property or distribution under this Plan on account of such Interests.

| Class | Status |
|---|---|
| Class 4 – Interests | Impaired |

# ARTICLE V

## ACCEPTANCE OR REJECTION OF THE PLAN

5.1    <u>Voting of Claims</u>.  Each holder of an Allowed Claim in an Impaired Class of Claims as of the Voting Record Date that is entitled to vote on the Plan pursuant to Article IV of the Plan shall be entitled to vote to accept or reject the Plan as provided in such order as is entered by the Bankruptcy Court establishing procedures with respect to the solicitation and tabulation of votes to accept or reject the Plan, or any other order(s) of the Bankruptcy Court. For purposes of calculating the number of Allowed Claims in a Class of Claims that have voted to accept or reject the Plan under section 1126(c) of the Bankruptcy Code, all Allowed Claims in such Class held by one Entity or any Affiliate thereof shall be aggregated and treated as one Allowed Claim in such Class.  Claims against each individual Debtor have been classified together for purposes of describing treatment under the Plan, voting and distribution. Each Class of Claims against a Debtor shall be treated as being in a separate sub-Class for each Debtor for the purpose of voting and/or receiving distributions in the event the Bankruptcy Court determines that it is inappropriate to consolidate the Debtors for voting or distribution purposes.

**All ballots must be received by _____, 2011 at 5:00 p.m. prevailing Eastern time. Ballots may not be transmitted orally, by facsimile, or by electronic mail.**

5.2    <u>Elimination of Vacant Classes</u>.  Any Class of Claims that is not occupied as of the date of commencement of the Confirmation Hearing by the holder of an Allowed Claim or a Claim temporarily Allowed under Bankruptcy Rule 3018 (<u>e.g.</u>, no Ballots are cast in a Class entitled to vote on the Plan) shall be deemed eliminated from the Plan for purposes of voting to accept or reject the Plan and for purposes of determining acceptance or rejection of the Plan by such Class pursuant to section 1129(a)(8) of the Bankruptcy Code.

5.3    <u>Nonconsensual Confirmation</u>.  If any Impaired Class of Claims entitled to vote shall not accept the Plan by the requisite statutory majorities provided in section 1126(c) of the Bankruptcy Code, the Debtors reserve the right to amend the Plan in accordance with section 13.7 hereof, or undertake to have the Bankruptcy Court confirm the Plan under section 1129(b) of the Bankruptcy Code, or both.  With respect to any Impaired Classes of Claims that are deemed to reject the Plan, the Debtors shall request the Bankruptcy Court to confirm the Plan under section 1129(b) of the Bankruptcy Code.

# ARTICLE VI

## PROVISIONS GOVERNING DISTRIBUTIONS

6.1.    <u>Method of Distributions Under the Plan</u>.

(a)    Distributions of Cash.  The Plan Administrator will make all distributions under the Plan.  All distributions under the Plan shall be made in accordance with the priorities established by the Plan.  At the option of the Plan Administrator, any Cash payment to be made pursuant to the Plan may be made by check or wire transfer.

(b)     Delivery of Distributions.  Distributions to the holders of Allowed Claims will be made as follows: (i) at the respective addresses set forth in the Schedules unless superseded by the address set forth on the proofs of claim filed by holders of Claims, or (ii) at the address set forth in any written notice of address change delivered to the Plan Administrator after the date of filing of any proof of claim.

(c)     Undeliverable and Unclaimed Distributions.  If any Allowed Claim holder's distribution is returned as undeliverable, the Plan Administrator will take reasonable steps to attempt to deliver the distribution to the holder of the Allowed Claim.  Any holder of an Allowed Claim that does not advise the Plan Administrator that it has not received its, his or her distribution within ninety (90) days after the date of attempted distribution will have its, his or her Claim for such undeliverable distribution discharged and will be forever barred from asserting any such Claim against the Debtors or their property.  Distributions must be negotiated within ninety (90) days of the date of distribution.  Any distributions which are undeliverable and unclaimed or have not been cashed within the time periods set forth above shall become available for redistribution to the holders of Allowed Claims in accordance with the Plan and the holder of an unclaimed or undeliverable distribution shall not be entitled to any further distribution under the Plan.  Any such Claim which is discharged will be deemed to be discharged in full, and the amount to such Claimant for subsequent years shall be redistributed pro rata to allow subsequent Claims for the same Class.

(d)     Allocation of Plan Distributions.  All distributions in respect of Allowed Claims will be allocated first to the original principal amount of such Claims (as determined for federal income tax purposes), with any excess allocated to the remaining portion of such Claims, if any.

## ARTICLE VII

## PROCEDURES FOR RESOLVING AND TREATING DISPUTED

## ADMINISTRATIVE EXPENSE CLAIMS AND CLAIMS

7.1     Objections to and Resolution of Administrative Expense Claims and Claims.  The Debtors or, after the Effective Date, the Plan Administrator or an Entity selected by the Successful Bidder, as applicable, shall be entitled to object to Claims, including all Claims set forth on the Schedules (including Claims that are not marked as disputed, contingent or uliquidated on the Schedules).  Any such objections to Claims shall be filed and served on or before the later of (i) 30 days after the Effective Date, (ii) such date as may be fixed by the Bankruptcy Court, whether fixed before or after the date specified in clause (i) above; and (iii) 120 days after the date of filing of the applicable proof of Claim or request for payment of an Administrative Expense Claim.

7.2     No Distribution Pending Allowance.  Notwithstanding any other provision of the Plan, no Cash shall be distributed under the Plan on account of any Disputed Claim, even if a portion of the Claim is not disputed, unless and until such Disputed Claim becomes an Allowed Claim and the amount of such Allowed Claim is determined by a Final Order or by stipulation between the Plan Administrator and the holder of such Disputed Claim.

7.3    Estimation.  The Plan Proponents may, at any time, request that the Bankruptcy Court estimate any contingent or Disputed Claim pursuant to section 502(c) of the Bankruptcy Code regardless of whether a Debtor has previously objected to such Claim.  In the event the Bankruptcy Court estimates any contingent or Disputed Claim, the estimated amount may constitute a maximum limitation on such Claim, as determined by the Bankruptcy Court. Notwithstanding this, the Debtors may elect to pursue any supplemental proceedings to object to the allowance and payment of such Claim.  All of the aforementioned Claims objection and estimation procedures are cumulative and not exclusive of one another.

7.4    Reserve for Disputed General Unsecured Claims.  On and after the Effective Date, the Plan Administrator shall establish the Disputed General Unsecured Claims Reserve with proceeds from the Plan Pool and hold in it Cash in an aggregate amount sufficient to pay to each holder of a Disputed General Unsecured Claim at the time distributions are made pursuant to the Plan the amount of Cash that such holder would have been entitled to receive if such Claim had been an Allowed Claim on the Effective Date.  Cash withheld and reserved for payments to holders of Disputed General Unsecured Claims shall be held and deposited in one or more segregated bank accounts to be used to satisfy such Claims as such Disputed General Unsecured Claims become Allowed Claims.

7.5    Allowance of Disputed Claims.  If, on or after the Effective Date, any Disputed General Unsecured Claim is deemed Allowed, the Plan Administrator shall, on the Subsequent Distribution Date that is at least fifteen (15) Business Days following the date on which the Disputed Claim becomes an Allowed Claim, distribute from the Disputed General Unsecured Claims Reserve to the holder of such Allowed Claim the amount of Cash that would have been distributed to such holder under the Plan on the dates distributions previously were made to holders of Allowed General Unsecured Claims had such Claim been an Allowed Claim on such dates, which amount shall not exceed the amount of Cash reserved on account of such Claim in the Disputed General Unsecured Claim Reserve.  The balance of any Cash previously retained but not distributed to a Disputed Claim holder shall be included in future calculations of Cash to be distributed to holders of Allowed Claims.

7.6    Limitation on Distributions.  Any holder of an Allowed Claim that does not advise the Plan Administrator that it has not received its, his or her distribution within ninety (90) days after the date of attempted distribution will have its, his or her Claim for such undeliverable distribution discharged and will be forever barred from asserting any such Claim against the Debtors or their property.  Distributions must be negotiated within ninety (90) days of the date of distribution.  Any distributions which are undeliverable and unclaimed or have not been cashed within the time periods set forth above shall become available for distribution to the holders of Allowed Claims in accordance with the Plan and the holder of an unclaimed or undeliverable distribution shall not be entitled to any further distribution under the Plan.

## ARTICLE VIII

## EXECUTORY CONTRACTS AND UNEXPIRED LEASES

8.1     Executory Contracts and Unexpired Leases.   Pursuant to sections 365(a) and 1123(b)(2) of the Bankruptcy Code, no later than fifteen (15) days before the scheduled hearing on Plan confirmation, the Debtors shall file (a) a motion to assume those executory contracts and unexpired eases that they deem necessary to continue with their operations as reorganized Debtors, which contracts and unexpired leases shall be assumed on the Effective Date, and (b) a separate motion seeking to reject those executory contracts and unexpired leases that the Debtors determine to reject.

8.2     Approval of Assumption of Executory Contracts and Unexpired Leases.   Entry of the Confirmation Order shall, subject to and conditioned upon the occurrence of the Effective Date, constitute, pursuant to sections 365(a) and 1123(b)(2) of the Bankruptcy Code, the assumption of the executory contracts and unexpired leases assumed pursuant to Section 8.1 hereof, effective as of the Effective Date.

8.3     Bar Date for Filing Proofs of Claim Relating to Rejection of Executory Contracts and Unexpired Leases.   Claims arising out of the rejection of an executory contract or unexpired Lease must be filed with the Bankruptcy Court and served upon the Debtors by no later than 30 days after the later of (i) thirty (30) days after the entry of an order rejecting such executory contract or unexpired Lease via U.S. mail, postage prepaid, electronic mail, electronic filing, and/or facsimile, or (ii) such other date as may be fixed by order of the Bankruptcy Court.   All such Claims not filed within such time will be forever barred from assertion against the Debtors, their Estate and their property.

8.4     Cancellation of Securities, Instruments, and Any Other Agreements Evidencing Claims and Interests.   Except as otherwise provided in this Plan, on the Effective Date and concurrently with the applicable distributions made pursuant to this Plan, the promissory notes, share certificates (including treasury stock), other instruments evidencing any Claims or Interests, including the Holdings Claim, and all options, warrants, calls, rights, puts, awards, commitments, or any other agreements of any character to acquire such Interests shall be deemed canceled and of no further force and effect, without any further act or action under any applicable agreement, law, regulation, order, or rule, and the obligations of the Debtors under the notes, share certificates, and other agreements and instruments governing such Claims and Interests shall be discharged; provided that nothing in the foregoing shall affect in any way the right of each holder of a Claim or Interest to enforce its rights under this Plan.   The holders of or parties to such canceled notes, share certificates, and other agreements and instruments shall have no rights arising from or relating to such notes, share certificates, and other agreements and instruments, or the cancellation thereof, except the rights provided pursuant to this Plan.

8.5.    The CEZ Claim.   The CEZ Claim is a Class 3 Claim.   The holder of such Claim may receive, in full and complete settlement, satisfaction and discharge of its Allowed Claim, its Pro Rata Share of the funds available from the Plan Pool, to be shared ratably with General Unsecured Creditors in Class 3; provided that, notwithstanding anything to the contrary in this Plan, all distributions on account of the CEZ Claim shall be made to Merrill Lynch in accordance

with section 510(a) of the Bankruptcy Code, unless Merrill Lynch agrees in its sole and absolute discretion, on or before the Confirmation Date, (a) not to enforce its contractual right to compel Debtors to turn over to Merrill Lynch the distribution (or any part thereof) to such the holder of the CEZ Claim or (b) to forego a distribution (or any part thereof) on account of the CEZ Claim.

8.6.    <u>The City of Millville Promissory Note.</u>  In accordance with Section 8.4 of this Plan, the Promissory Note dated December 23, 2004 (the "Promissory Note") between the City, NJMP, Lee F. Brahin and Harvey Siegel (collectively, the "Guarantors") shall be cancelled and discharged with respect to the Debtors and shall be treated in Class 3 of this Plan.  Upon confirmation of the Plan, the Guarantors shall continue to make all remaining monthly payments to the City relating to the Promissory Note consistent with the terms and conditions of the Promissory Note.

**ARTICLE IX**

**MEANS FOR IMPLEMENTATION OF THE PLAN**

9.1    <u>Funding of the Plan by NEI</u>.  The Plan shall be funded with the $2,000,000.00 in proceeds to be paid by NEI in the event that it is determined to be the Successful Bidder (the "NEI Funding").  In the event that NEI is the Successful Bidder, it shall receive on the Effective Date, in exchange for the NEI Funding, 80.1% of the Reorganized Equity Interests, 3.69236% of which it shall transfer to ML Green and 2.30764% of which it shall transfer to Holdings.

9.2    <u>Use of the NEI Funding Proceeds</u>.  In the event that NEI is the Successful Bidder, the proceeds of the NEI Funding shall be used to satisfy the following obligations on the Effective Date:

(a) $404,778.00 shall be used to pay the fees and expenses (including filing fees and costs) of attorneys, professionals, and consultants (i) retained by the Debtors and the Committee; provided the Debtors' professionals shall not be paid more than $105,000.00 of such funding, less $23,162.00 paid to such professionals on or before the Effective Date in accordance with the Cash Collateral Order and the Budget, and the Committee professionals shall not be paid more than $15,000 in accordance with the Cash Collateral Order and the Budget; and (ii) retained by Merrill Lynch, provided that Merrill Lynch's professionals shall not be paid more than $325,000 of such funding, less $71,692.00 paid to such professionals on or before the Effective Date in accordance with the Budget and the Cash Collateral Order.  In the event that the sum of $404,778.00 shall not be sufficient to satisfy such obligations on Effective Date and the full $2,000,000.00 funding has otherwise been used in accordance with section 9.2(a) of the Plan, the NEI Funding shall pay such outstanding obligations that exceed $404,778.00 (the "Excess").  Notwithstanding the foregoing, Reorganized NJMP shall pay the first $200,000 of such Excess from cash on hand as of the Effective Date that was not paid with the Funding and NEI shall pay the balance of the Excess as follows:

(ii)    approximately $50,000.000 shall be used to pay Priority Tax Claims;

(iii)    $500,000.00 shall be used to fund the Plan Pool for the benefit of General Unsecured Creditors;

(iv)    $209,222.00 shall be used to pay Ovations;

(v)    $336,000.00 shall be used to fund reserves for, among other things, debt payment, insurance, taxes and such other reserves as Merrill Lynch and Reorganized NJMP mutually shall deem necessary; and

(vi)    $500,000.00 shall be used to fund the operating and other liquidity obligations of the Reorganized Debtors.

(b) The remaining NEI Funding, if any, shall pay such other costs and expenses as Merrill Lynch and NEI mutually shall deem necessary to continue the ongoing business operations of Reorganized Debtors.

9.3    <u>Funding of the Plan by a Successful Bidder Other Than NEI.</u>  In the event any party other than NEI is determined to be the Successful Bidder, such party shall receive on the Effective Date 100% of the Reorganized Equity Interests.  Of such successful bid, $20,500,000.00 shall be paid to Merrill Lynch on the Effective Date in accordance with 4.1(c) of the Plan and $2,000,000.00 shall be used to fund the Plan in the manner set forth in Section 9.2 of the Plan.  Any amount paid by the Successful Bidder in excess of the amount stated herein to pay Merrill Lynch, to fund the Plan, to pay the Minimum Overbid, and to pay professional fees of attorneys, professionals, and consultants employed in the Chapter 11 Cases, and any remaining balance shall be added to the Plan Pool for distribution to General Unsecured Creditors.  This remaining balance distribution, of any, shall be made pro rata to Class 3 Claimants upon finalization of the payment of Administrative Claims to attorneys, professionals, and consultants.

9.4    <u>Section 1145 Exemption</u>.  Under section 1145 of the Bankruptcy Code, the Reorganized Equity Units to be issued pursuant to the Plan will be freely tradable by the recipients thereof, subject to (1) the provisions of section 1145(b)(1) of the Bankruptcy Code relating to the definition of an underwriter in section 2(a)(11) of the Securities Act; and (2) compliance with any rules and regulations of the Securities and Exchange Commission, if any, applicable at the time of any future transfer of such securities or instruments.

9.5    <u>Continued Corporate Existence and Vesting of Assets</u>.

(a)    Except as otherwise provided herein, the Debtors will, as the Reorganized Debtors, continue to exist after the Effective Date as follows: NJMP shall retain its corporate existence; Operating shall be consolidated for all purposes into NJMP, and appropriate steps will be taken to dissolve Operating pursuant to New Jersey law; and Development and Urban shall each retain their corporate existence; with all the powers of a corporation, limited liability company, partnership or limited partnership, as appropriate, under applicable law and without prejudice to any right to alter or terminate such existence (whether by merger, dissolution or otherwise) under applicable state law.  The following will occur and be effective as of the date specified in the documents effectuating this Plan or as of the Effective Date, if no other effective date is specified in the documents, and will be authorized and approved in all respects and for all

purposes without any requirement of further action by members or directors of the Debtors: (i) the adoption of new or amended and restated bylaws, operating agreements; (ii) entry into revised loan facilities with Merrill Lynch if NEI is the Successful Bidder; (ii) the distribution of Cash pursuant to this Plan; (iii) the establishment of the Disputed General Unsecured Claims Reserve; (iv) the adoption, execution, delivery and implementation of all contracts, agreements, leases, instruments, releases and other agreements or documents related to this Plan; (v) the issuance of the Reorganized Equity Interests; and (vi) the other matters provided for under this Plan involving the corporate structure of the Debtors or the Reorganized Debtors or any corporate action to be taken by or required of the Debtors or Reorganized Debtors.

(b)      Except as otherwise provided herein, on the Effective Date, all property of the Debtors' estates, including the Retained Causes of Action, shall, in accordance with section 1141(c) of the Bankruptcy Code, vest in the Reorganized Debtors, free and clear of all Liens (except for Liens granted in connection with the Lender Debt Distribution), Claims, and Interests; provided, however, pursuant to the Cash Collateral Order, Merrill Lynch received adequate protection liens in avoidance actions arising under Chapter 5 of the Bankruptcy Code (the "Avoidance Actions").  In the event of Collateral Diminution (as defined in the Cash Collateral Order), Avoidance Actions shall vest in Merrill Lynch and it shall have standing to prosecute such Avoidance Actions to satisfy the Collateral Diminution, and the Reorganized Debtors shall retain the balance of any recoveries therefrom (net of expenses) or pursue those Avoidance Actions that Merrill Lynch determines to forego.  In such event, or if there is no Collateral Diminution or Merrill Lynch chooses to abandon the Avoidance Actions to Reorganized Debtors, any recoveries, net of expenses, shall be distributed ratably to holders of general unsecured claims.

On and after the Effective Date, the Reorganized Debtors may operate their business and may use, acquire and dispose of property and compromise or settle any Claims without supervision or approval by the Bankruptcy Court and free of any restrictions of the Bankruptcy Code or Bankruptcy Rules, other than those restrictions expressly imposed by this Plan or Confirmation Order.  Without limiting the foregoing, each of the Reorganized Debtors may pay the charges that it incurs on or after the Effective Date for professionals' fees, disbursements, expenses or related support services without application to the Bankruptcy Court.

9.6      Preservation of Causes of Action.  From and after the Effective Date, and subject to Section 9.5(b) of this Plan, any and all claims, Causes of Action and Retained Causes of Action accruing to the Debtors shall be preserved and retained by the Reorganized Debtors and/or Merrill Lynch, who shall have the exclusive right to enforce any such Causes of Action. The Reorganized Debtors and/or Merrill Lynch may pursue, abandon, settle or release any or all such Causes of Action and Retained Causes of Action, as they deem appropriate, without the need to obtain approval or any other or further relief from the Bankruptcy Court.

9.7      Substantive Consolidation.  On the Effective Date, the Chapter 11 Cases and the Debtors and their Estates shall be deemed to be substantively consolidated for voting and distribution purposes only under this Plan.  The assets and liabilities of the Debtors shall be pooled and all Claims shall be satisfied from the assets of a single consolidated estate.  Any Claims against one or more of the Debtors based upon a guaranty, indemnity, co-signature,

surety or otherwise, of Claims against another Debtor shall be treated as a single Claim against the consolidated estate of the Debtors and shall be entitled to Distributions under this Plan only with respect to such single Claim.

9.8     Effectuating Documents and Further Transactions.  The Debtors and Reorganized Debtors, as appropriate, are authorized to execute, deliver, file or record such contracts, instruments, releases, indentures and other agreements or documents and to take such actions as may be necessary or appropriate to effectuate and further evidence the terms and conditions of the Plan.

9.9     Direction to Parties.  From and after the Effective Date, the Reorganized Debtors may apply to the Bankruptcy Court for an order directing any necessary party to execute or deliver or to join in the execution or delivery of any instrument required to effect a transfer of property dealt with by the Plan, and to perform any other act, including the satisfaction of any Lease or Lien, that is necessary for the consummation of the Plan, pursuant to section 1142(b) of the Bankruptcy Code.

9.10     Plan Administrator.

(a)     Appointment and Powers.  Lee F. Brahin shall serve as Plan Administrator without Bond.  The Plan Administrator shall receive no compensation for any services rendered or reimbursement of any expenses incurred pursuant to the Plan.  If Mr. Brahin is unable to serve as Plan Administrator, the Reorganized Debtors shall designate a substitute Plan Administrator.  All distributions to be made under the Plan shall be made by the Plan Administrator.  The duties and powers of the Plan Administrator shall include, but not be limited to, the following:

(i)     To exercise all power and authority that may be necessary to implement the Plan, commence and prosecute all proceedings that may be commenced and take all actions that may be taken by any officer, director or shareholder of the Debtors with like effect as if authorized, exercised and taken by unanimous action of such officers, directors and shareholders, including consummating the Plan;

(ii)     To maintain all bank accounts, make distributions and take other actions consistent with the Plan, including the maintenance of appropriate reserves, in the name of the Reorganized Debtors;

(iii)     To take all steps reasonably necessary and practicable to continue the corporate existence of the Reorganized Debtors;

(iv)     To make decisions regarding the retention or engagement of professionals or other persons by the Reorganized Debtors to undertake the duties necessary to consummate the Plan, and to pay, without court approval, all reasonable fees and expenses of the Reorganized Debtors relating to the Chapter 11 Cases that accrue from and after the Effective Date;

(v)     To take all other actions not inconsistent with the provisions of the Plan which the Plan Administrator deems reasonably necessary or desirable in connection with the administration and consummation of the Plan; and

(vi)     To exercise such other powers as may be vested in the Plan Administrator by order of the Bankruptcy Court.

(b)     Investments.  All Cash held by the Plan Administrator in any accounts that is necessary to consummate the Plan (including, but not limited to the Plan Pool and the Disputed General Unsecured Claims Reserve) shall be invested in accordance with section 345 of the Bankruptcy Code or as otherwise permitted by a Final Order of the Bankruptcy Court.

(c)     No Agency Relationship, Limitation of Liability of Plan Administrator, Indemnification and Insurance.  The Plan Administrator and his or her agents shall not be deemed to be the agent for any of the creditors in connection with the Cash held or distributed pursuant to the Plan.  The Plan Administrator and his or her agents shall not be liable for any mistake of fact or law or error of judgment or any act or omission of any kind unless it constitutes gross negligence or willful misconduct.  The Plan Administrator shall be indemnified and held harmless, including the costs of defending such claims, by the Debtors and their estates against any and all claims arising out of the performance of his or her duties under the Plan, except to the extent his or her actions constitute gross negligence or willful misconduct.  The Plan Administrator may conclusively rely, and shall be fully protected personally in acting upon, any statement, instrument, opinion, report, notice, request, consent, order, or other instrument or document which he believes to be genuine and to have been signed or presented by the proper party.  The Plan Administrator may rely upon information previously generated by the Debtors.

9.11     Winding Up Affairs of the Estates.  On and after the Effective Date, the Plan Administrator may, in the name of the Debtors, take such actions without supervision or approval by the Bankruptcy Court and free of any restrictions of the Bankruptcy Code or the Bankruptcy Rules, other than any restrictions expressly imposed by the Plan or the Confirmation Order, for the purpose of winding up the affairs of the Debtors in their capacity as Debtors and Debtors-in-Possession.

## ARTICLE X

## SETTLEMENT, RELEASE, INJUNCTION AND RELATED PROVISIONS

10.1     Compromise and Settlement of Claims, Interests, and Controversies.  Pursuant to section 363 of the Bankruptcy Code and Bankruptcy Rule 9019 and in consideration for the distributions and other benefits provided pursuant to the Plan, the provisions of the Plan shall constitute a good faith compromise of all Claims, Interests, and controversies relating to the contractual, legal, and other rights that a holder of a Claim or Interest may have with respect to any Allowed Claim or Interest, or any distribution to be made on account of such Allowed Claim or Interest.  The entry of the Confirmation Order shall constitute the Bankruptcy Court's approval of the compromise or settlement of all such Claims, Interests, and controversies, as well as a finding by the Bankruptcy Court that such compromise or settlement is in the best interests

of the Debtors, their estates, and holders of Claims and Interests and is fair, equitable, and reasonable.

10.2    <u>Releases of Lender Released Parties by the Debtors and the Estates</u>.  As of the Effective Date, the Committee, the Debtors, their Estates, the Reorganized Debtors and the successors and assigns of any of them, and any other person that claims or might claim through, on behalf of, or for the benefit of any of the foregoing, shall be deemed to have irrevocably and unconditionally, fully, finally and forever waived, released, acquitted and discharged each of the Lender Released Parties from any and all claims or manner of action, suits, Causes of Action, actions, liens, agreements, promises, liabilities, demands, fees, costs and expenses, of any type whatsoever, direct or derivative, contract or tort, legal or equitable, indemnity or otherwise, known or unknown, common law or statutory, contingent or fixed, liquidated or unliquidated, matured or unmatured, that arise out of or relate in any way to any or all of the Debtors, any financing provided to the Debtors by Merrill Lynch or any Affiliate and any claim, act, fact, transaction, occurrence, statement or omission in connection therewith occurring at any time up to and including the Effective Date.  Notwithstanding anything contained in this Section 9.2, the foregoing is not intended to release the Lender Released Parties' obligations arising under this Plan.

10.3    <u>Releases by Creditors</u>.  On the Effective Date and subject to the holder of an Allowed Claim receiving the treatment to which such holder is entitled under this Plan, and to the fullest extent permissible under applicable law, all holders of Claims, in consideration for the obligations of Merrill Lynch under this Plan, will be deemed to have irrevocably and unconditionally, fully, finally and forever waived, released, acquitted and discharged each of the Lender Released Parties from any and all claims or manner of action, suits, Causes of Action, actions, liens, agreements, promises, liabilities, demands, fees, costs and expenses, of any type whatsoever, direct or derivative, contract or tort, legal or equitable, indemnity or otherwise, known or unknown, common law or statutory, contingent or fixed, liquidated or unliquidated, matured or unmatured, that arise out of or relate in any way to any or all of the Debtors and/or any financing provided to the Debtors by Merrill Lynch or any Affiliate or any claim, act, fact, transaction, occurrence, statement or omission in connection therewith occurring up to and including the Effective Date.

*10.4    <u>Injunction</u>.  Except as otherwise expressly provided in the Plan, the Confirmation Order or a separate order of the Bankruptcy Court, all Entities who have held, hold or may hold Claims against the Debtors and/or their estate, are permanently enjoined, from and after the Effective Date, from (a) commencing or continuing in any manner any action or other proceeding of any kind with respect to any such Claim, (b) the enforcement, attachment, collection or recovery by any manner or means of any judgment, award, decree or order against the Debtors on account of any such Claim, (c) creating, perfecting or enforcing any Lien or encumbrance of any kind against the Debtor or against the property of the Debtors, (d) asserting any right of setoff or subrogation of any kind against any obligation due from the Debtors or against the property or interests in property of the Debtors, and (e) commencing or continuing in any manner any action or other proceeding of any kind with respect to any claims and Causes of Action which are extinguished, dismissed or released pursuant to the Plan.  Such injunction shall*

*extend to successors of the Debtors and their property and interests in property. None of the foregoing shall enjoin the rights of holders of Claims that arise under the Plan.*

10.5    <u>Exculpation</u>.  None of the Released Parties, nor any of their respective members, officers, directors, employees, advisors, professionals or agents shall have or incur any liability to any holder of a Claim or Interest for any act or omission in connection with, related to, or arising out of, the Chapter 11 Cases, negotiations regarding or concerning the Plan, the pursuit of confirmation of the Plan, the consummation of the Plan, the administration of the Plan or the property to be distributed under the Plan, or any pre-petition acts or omissions to the maximum extent permissible under applicable law, except for willful misconduct or gross negligence, and, in all respects, the Released Parties, and each of their respective members, officers, directors, employees, advisors, professionals and agents shall be entitled to rely upon the advice of counsel with respect to their duties and responsibilities under the Plan.

## ARTICLE XI

## EFFECTIVENESS OF THE PLAN

11.1    <u>Conditions Precedent to Effective Date</u>.  The following are conditions precedent to the Effective Date of the Plan unless waived by the Debtors pursuant to Section 11.2 of the Plan:

(a)    The Confirmation Order shall have been entered in form and substance reasonably satisfactory to Debtors and Merrill Lynch;

(b)    the Confirmation Order shall provide that the Debtors or the Reorganized Debtors are authorized to take all actions necessary or appropriate to enter into, implement and consummate the contracts, instruments, releases, leases and other agreements or documents created in connection with this Plan;

(c)    all actions, documents and agreements necessary to implement this Plan shall have been or been deemed, effected or executed;

(d)    all releases of the Lender Released Parties set forth in this Plan have been approved by the Bankruptcy Court;

(e)    the Successful Bidder shall have funded all consideration in respect of its successful bid; and

(f)    no stay of the Confirmation Order shall then be in effect at the time the other conditions set forth in this section 11.1 are satisfied or waived; and

11.2    <u>Waiver of Conditions</u>.  The Debtors, with the consent of Merrill Lynch, may waive one or more of the conditions precedent set forth in Section 11.1 of the Plan.

# **ARTICLE XII**

# **RETENTION OF JURISDICTION**

12.1    <u>Jurisdiction of Bankruptcy Court</u>.  The Bankruptcy Court shall retain jurisdiction of all matters arising out of, and related to, the Chapter 11 Case and the Plan pending the final allowance or disallowance of all Claims affected by the Plan, pursuant to, and for the purposes of, sections 105(a) and 1142 of the Bankruptcy Code and for, among other things, the following purposes:

(a)    To hear and determine any and all adversary proceedings, applications and contested matters, even if filed after the Confirmation Date;

(b)    To hear and determine any objections to Administrative Expense Claims or Claims;

(c)    To enter and implement such orders as may be appropriate in the event the Confirmation Order is for any reason stayed, revoked, modified or vacated;

(d)    To issue such orders in aid of execution and consummation of the Plan, to the extent authorized by section 1142 of the Bankruptcy Code;

(e)    To consider any amendments to or modifications of the Plan, to cure any defect or omission, or reconcile any inconsistency in any order of the Bankruptcy Court, including, without limitation, the Confirmation Order;

(f)    To hear and determine all applications for compensation and reimbursement of expenses of professionals under sections 330, 331 and 503(b) of the Bankruptcy Code;

(g)    To hear and determine disputes arising in connection with the interpretation, implementation or enforcement of the Plan as is necessary to ensure that the purpose of the Plan is carried out;

(h)    To recover all assets of the Debtors and property of their Estates, wherever located;

(i)    To hear and determine matters concerning state, local and federal taxes in accordance with sections 346, 505 and 1146 of the Bankruptcy Code;

(j)    To hear and determine any requests by the Debtors to sell any asset pursuant to section 363 of the Bankruptcy Code;

(k)    To hear any other matter not inconsistent with the Bankruptcy Code;

(l)    To enter a final decree closing the Chapter 11 Case;

(m)    To enforce and interpret the terms and conditions of this Plan or the Confirmation Order;

(n)    To correct any defect, cure any omission or reconcile any inconsistency in this Plan or the Confirmation Order as may be necessary to implement the purposes and intent of this Plan;

(o)    To determine any other matters not inconsistent with the Bankruptcy Code; and

(p)    To enter such orders and/or take such action as is necessary to enjoin any interference with the implementation or the consummation of this Plan.

If the Bankruptcy Court abstains from exercising, or declines to exercise, jurisdiction, or is otherwise without jurisdiction over any matter set forth in this Article, of if the Debtors or Reorganized Debtors elect to bring an action or proceeding in any other forum, then this Article shall have no effect upon and shall not control, prohibit, or limit the exercise of jurisdiction by any other court, public authority, or commission having competent jurisdiction over such matters.

## ARTICLE XIII

## MISCELLANEOUS PROVISIONS

13.1    <u>Bar Date for Administrative Expense Claims</u>.    The Confirmation Order will establish an Administrative Expense Claims bar date for filing Administrative Expense Claims other than for professional compensation and reimbursement claims incurred prior to the Effective Date (which are governed by section 2.3 of the Plan).    Holders of Administrative Expense Claims not paid prior to the Effective Date shall file Administrative Expense Payment Requests on or before such Administrative Expense Claims bar date or be forever barred from doing so.    The notice of Plan confirmation to be delivered pursuant to Bankruptcy Rules 3020(c) and 2002(f) will set forth such date and constitute notice of this Administrative Expense Claims bar date.    The Plan Administrator shall have thirty (30) days following the Administrative Expense Claims bar date (or such longer period as may be Allowed by order of the Bankruptcy Court) to review and object to such Administrative Expense Claims before a hearing to determine allowance of such Administrative Expense Claims

13.2    <u>The Committee</u>.    On the Effective Date, the Committee and any other committee appointed in the Chapter 11 Cases pursuant to section 1102 of the Bankruptcy Code will be dissolved and the members thereof and the professionals retained by the Committee in accordance with section 1103 of the Bankruptcy Code (including, without limitation, attorneys, investment advisors, accountants and other professionals) will be released and discharged from their respective fiduciary obligations, duties and responsibilities, except that the Committee shall continue to exist for a period of sixty (60) days after the Effective Date solely for purposes of: (i) asserting, disputing, and participating in the resolution of professional fee claims; (ii) prosecuting or participating in any appeal of the Confirmation Order or any request for reconsideration thereof; (iii) enforcing compliance with this Plan and Confirmation Order by the Reorganized Debtors, and (iv) protecting the rights of unsecured creditors under this Plan (the "Post-

Confirmation Committee Obligations"). The Committee reserves the right to seek Bankruptcy Court approval to extend the existence of the Committee if needed to effectuate the Post-Confirmation Committee Obligations.

13.3    Holdings.    Holdings shall receive no property or distribution under this Plan on account of the Holdings Claim.

13.4    TrackRacket, Inc. Litigation

On or about December 23, 2009, TrackRacket, Inc., *et al.* instituted a Complaint in the Superior Court of New Jersey, Law Division, Cumberland County, Docket No. L-1230-09 ("Complaint"). TrackRacket, Inc. ("TrackRacket") brought this action against NJMP under New Jersey state nuisance laws, and as such the claim sounds in tort. As set forth in the Complaint, it is TrackRacket's position that the decibel levels emanating from NJMP are extraordinarily high. The Complaint seeks to enforce the state nuisance laws, which would force NJMP to manage its noise to what TrackRacket alleges are reasonable/livable levels. Regarding monetary damages, TrackRacket submits that the value of their homes have decreased due to the noise emanating from NJMP and have used federal noise guidelines to substantiate the purported drop in value. TrackRacket estimates that the monetary damage of the claims of the households that it represents is in excess of $350,000. This is exclusive of the equitable remedies being sought for the remediation of noise levels.

NJMP has asserted its defenses to the Complaint and has denied any responsibility for the allegations in the Complaint. NJMP states that it is in full compliance with all local, state and federal noise guidelines. Additionally, NJMP states that it is in compliance with the guidelines set forth in a Consent Order of the Superior Court of New Jersey, Law Division, Cumberland County, No. CUM-L-000320-05.

13.5    Exemption from Transfer Taxes.    Pursuant to sections 106, 1141 and 1146(a) of the Bankruptcy Code, the issuance, transfer, or exchange of notes or equity securities under or in connection with the Plan, the creation of any mortgage, deed of trust, or other security interest, the making or assignment of any lease or sublease, the re-vesting, transfer or sale of any real or property of the Debtors pursuant to the Plan, or the making or delivery of any deed or other instrument of transfer under, in furtherance of, or in connection with, the Plan, including, without limitation, the Reorganized Equity Interests, and any merger agreements or agreements of consolidation, deeds, bills of sale, or assignments executed in connection with any of the transactions contemplated under the Plan shall not be subject to any stamp, real estate transfer, mortgage recording, sales, use or other similar Tax. The Confirmation Order shall direct all state and local government officials and agents to forego the collection of any such tax or governmental assessment and to accept for filing and recordation, without the payment of any such tax or government assessment, any instrument or other document issued or transferred pursuant to the Plan, including, without limitation, any mortgage, deed of trust, or other security interest.

13.6    Post-Confirmation Date Fees and Expenses.    From and after the Effective Date, the Debtors shall, in the ordinary course of business and without the necessity of any approval by

the Bankruptcy Court, pay those professional persons employed by the Debtors in connection with the implementation and consummation of the Plan, the reconciliation of Claims, the prosecution of Causes of Action, or any other matters as to which such professionals are employed.  By the last business day of each month following the month for which compensation is sought, those professionals retained by the Debtors shall submit their respective monthly statements to the Debtors (or the Reorganized Debtors, as applicable) and Merrill Lynch.  Such statements shall describe in detail the services performed, the fees for such services and the disbursements made in connection with the rendition of such services.  The Debtors (or Reorganized Debtors, as applicable) and Merrill Lynch will have fourteen (14) calendar days from the date of receipt of such statements to review such statements and to object to such statements.  At the expiration of such fourteen (14) calendar day period, the Reorganized Debtors shall promptly pay such statement, except those fees and/or expenses as to which an objection has been timely made in writing.  In the event of objection, the parties shall confer with one another and attempt to reach agreement regarding the correct payment to be made.  If agreement cannot be reached within twenty-one (21) calendar days of receipt of the statement, the matter shall be submitted to the Bankruptcy Court within seven (7) Business Days thereafter in the form of a written objection setting forth the precise nature of the objection and the monetary amount at issue.  Thereafter, the Bankruptcy Court will consider and dispose of the objection.  The Reorganized Debtors shall be required to pay all compensation and expenses, or any portion thereof, that is not the subject of a timely objection.

13.7    Payment of Statutory Fees.  All fees payable pursuant to section 1930 of Title 28 of the United States Code shall be paid on the Effective Date or as soon as practicable thereafter and the Reorganized Debtors shall prepare and submit such post-confirmation reports as may be required until the closing of the Debtors' Chapter 11 Cases.

13.8    Amendment or Modification of the Plan.    Alterations, amendments or modifications of or to the Plan may be proposed in writing by the Debtors, with the consent of Merrill Lynch and the Committee, at any time prior to the Confirmation Date, provided that the Plan, as altered or modified, satisfies the conditions of sections 1122 and 1123 of the Bankruptcy Code, and the Debtors shall have complied with section 1125 of the Bankruptcy Code.  The Plan may be altered, or modified by the Debtors at any time after the Confirmation Date and before substantial consummation, with the consent of Merrill Lynch and the Committee, provided that the Plan, as altered, or modified, satisfies the requirements of sections 1122, 1123, and 1127 of the Bankruptcy Code and the Bankruptcy Court, after notice and a hearing, confirms the Plan, as altered, or modified, under section 1129 of the Bankruptcy Code and the circumstances warrant such alterations, amendments or modifications.  A holder of a Claim that has accepted the Plan shall be deemed to have accepted the Plan, as altered, or modified, if the proposed alteration, amendment or modification does not materially and adversely change the treatment of the Claim of such holder.  Prior to the Effective Date, the Debtors may make appropriate technical non-material modifications to the Plan or the Disclosure Statement without further order or approval of the Bankruptcy Court, provided that such technical modifications do not adversely affect the treatment of holders of Claims and is approved by Merrill Lynch.

13.9    Severability.    In the event that the Bankruptcy Court determines that any provision in the Plan is invalid, void or unenforceable, such provision shall be invalid, void or

unenforceable with respect to the holder or holders of such Claims as to which the provision is determined to be invalid, void or unenforceable. The invalidity, voidness or unenforceability of any such provision shall in no way limit or affect the enforceability and operative effect of any other provision of the Plan and shall not require the re-solicitation of any acceptance or rejection of the Plan unless otherwise ordered by the Bankruptcy Court.

13.10    Revocation or Withdrawal of the Plan. The Debtors reserve the right to revoke or withdraw the Plan prior to the Confirmation Date. If the Debtors revoke or withdraw the Plan prior to the Confirmation Date, then the Plan shall be deemed null and void. In such event, nothing contained herein shall constitute or be deemed a waiver or release of any claims by or against the Debtors or any other Person or Entity or to prejudice in any manner the rights of the Debtors or any Person or Entity in any further proceedings involving the Debtors.

13.11    Binding Effect. The Plan shall be binding upon and inure to the benefit of the Debtors and the holders of Claims and their respective successors and assigns, whether or not the Claim of such holder is impaired under the Plan and whether or not such holder has accepted the Plan.

13.12    Term of Injunctions or Stays. Unless otherwise provided in accordance with this Plan or an applicable order of the Bankruptcy Court, all injunctions or stays provided for in the Chapter 11 Cases pursuant to sections 105 or 362 of the Bankruptcy Code shall remain in full force and effect until the Effective Date.

13.13    No Waiver of Discharge. Except as otherwise specifically provided herein, nothing in this Plan shall be deemed to waive, limit or restrict in any way the discharge granted upon Confirmation of this Plan pursuant to section 1141 of the Bankruptcy Code.

13.14    Notices. All notices, requests and demands to or upon the Debtors to be effective shall be in writing and, unless otherwise expressly provided herein, shall be deemed to have been duly given or made when actually delivered or, in the case of notice by facsimile transmission, when received and telephonically confirmed, addressed as follows:

If to the Debtor:

New Jersey Motorsports Park, LLC
47 Warbird Drive
Millville, NJ 08332
Attention: Lee F. Brahin
Telephone: 856-327-8000
Facsimile: 856-327-8835

with a copy to:

Cohen Seglias Pallas Greenhall & Furman, PC
30 South 17th Street, 19th Floor
Philadelphia, PA  19103
Attention: Steven D. Usdin, Esquire
Telephone: 215-564-1700

Facsimile: 267-238-4408

And to Counsel for the Committee:

Porzio, Bromberg & Newman, PC
100 Southgate Parkway
P.O. Box 1997
Morristown, New Jersey  07962
Attention:  Warren J. Martin, Jr., Esquire
Brett S. Moore, Esquire
Telephone:  973-538-4006
Facsimile: 973-538-5146

13.15  <u>Governing Law</u>.  Except to the extent the Bankruptcy Code, Bankruptcy Rules or other federal law is applicable, and subject to the provisions of any contract, instrument, release, indenture or other agreement or document entered into in connection with this Plan, the rights and obligations arising under this Plan shall be governed by, and construed and enforced in accordance with, the laws of the State of New Jersey, without giving effect to the principles of conflicts of law of such jurisdiction.

13.16  <u>Withholding and Reporting Requirements</u>.  In connection with the consummation of the Plan, the Plan Administrator shall comply with all withholding and reporting requirements imposed by any federal, state, local or foreign taxing authority and all distributions hereunder shall be subject to any such withholding and reporting requirements.

13.17  <u>Headings</u>.  Headings are used in the Plan for convenience and reference only, and shall not constitute a part of the Plan for any other purpose.

13.18  <u>Exhibits/Schedules</u>.  Any exhibits and schedules to the Plan are incorporated into and are a part of the Plan as if set forth in full herein.

13.19  <u>Filing of Additional Documents</u>.  On or before substantial consummation of the Plan, the Debtors shall file with the Bankruptcy Court such agreements and other documents, if any, as may be necessary or appropriate to effectuate and further evidence the terms and conditions of the Plan.

13.20  <u>Inconsistencies</u>.  To the extent the Plan is inconsistent with the Disclosure Statement, the provisions of the Plan shall be controlling.  To the extent the Plan is inconsistent with the Confirmation Order, the Confirmation Order will control.

13.21  <u>Section 1125(e) of the Bankruptcy Code</u>.  The Debtors have, and upon confirmation of the Plan shall be deemed to have, solicited acceptances of the Plan in good faith and in compliance with the applicable provisions of the Bankruptcy Code.

13.22  <u>Return of Security Deposits</u>.  Unless the Debtors have agreed otherwise in a written agreement or stipulation approved by the Bankruptcy Court, all security deposits

provided by the Debtors to any Person or Entity at any time shall be returned to the Debtors within twenty-one (21) days after the Effective Date, without deduction or offset of any kind.

     13.23  <u>Destruction of Documents</u>.  The Debtors may, from and after the Effective Date and without further approval of the Bankruptcy Court, destroy, or arrange for the destruction of, those documents in its possession, custody or control that it reasonably determines are no longer necessary to the implementation and consummation of the Plan, the pursuit of Causes of Actions and/or the Claims resolution process.

Respectfully submitted,

              /s/ Lee F. Brahin
              **Lee F. Brahin**
              **Co-Manager of Managing Member**

Dated:  May 26, 2011

      Cohen Seglias Pallas Greenhall & Furman, PC
By:    ***s/Steven D. Usdin, Esquire (PA ID No. 36381)***
      Steven D. Usdin, Esquire
      Nella M. Bloom, Esquire (NB3891)
      30 South 17th Street, 19th Floor
      Philadelphia, PA  19103
      215-564-1700
      *Counsel for the Debtor*

Dated:  May 26, 2011